COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Frank


THERESA TIBBITTS

                                        MEMORANDUM OPINION*
v.    Record No. 2487-99-2                 PER CURIAM
                                         APRIL 11, 2000
DEPARTMENT OF SOCIAL SERVICES
 FOR HENRICO COUNTY


              FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      George F. Tidey, Judge

           (John W. Parsons; Wood and Wood, P.C., on
           brief), for appellant.

           (George T. Elmore, Assistant County Attorney;
           Jennifer C. Hollar, Guardian ad litem for the
           minor child, on brief), for appellee.


     Theresa Tibbitts (mother) appeals the decision of the circuit

court terminating her parental rights to Brandon Lee Tibbitts

(Brandon).  Mother contends that the trial court erred when it

found that she failed, without good cause, to maintain contact

with or to provide or substantially plan for Brandon's future for

a period of six months following his placement in foster care,

notwithstanding the efforts by the Department of Social Services

for the County of Henrico (DSS) to strengthen the parent-child

relationship.  Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted). The trial judge's findings, "'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (citation omitted).

Under Code § 16.1-283(C)(1), a parent's rights to a child placed in foster care may be terminated if the trial court finds, by clear and convincing evidence, that it is in the child's best interests and that:

-

> The parent . . . [has], without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.  Proof that the parent . . . [has] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition . . . .

Code § 16.1-283(C)(1).

The record establishes that Brandon was taken into foster care in January 1997 following a call to DSS that mother had left Brandon in the care of another person, but failed to retrieve him.  At that time, mother was homeless.

DSS provided mother with numerous services designed to address her underlying problems and strengthen the parent-child bond, including transportation for visitation; coordinating assistance from the Department of Rehabilitative Services (DRS) for housing, job training and referrals, and financial management; and referring mother to Child Support Enforcement. Despite the assistance of DSS, mother was unable to remain in stable housing or to maintain steady employment.  She worked only two months at a job obtained through DRS.  Mother also failed to attend monthly family therapy sessions.

-

Mother obtained an apartment with the assistance of DSS in March 1997 and was able to have increased visitation with Brandon. Beginning in July 1997, however, mother fell behind on her rent. She refused DSS's offer to pay $350 if she paid the remaining balance of $50 herself. Mother did not pay rent in August or September and left the apartment to move to one charging higher rent.

In June 1997, mother cancelled a weekend visit with Brandon because she was going to the beach. She cancelled another weekend visit in August because she lacked money to buy food, although she was working and receiving social security payments. When DSS attempted to set up home-based services designed to allow weekly visitation, mother failed to attend the meeting. Mother became increasingly less conscientious in maintaining weekly visitation, with the frequency dropping from three in December 1997, to none in March 1998, and only two visits total in May through July 1998.

The evidence demonstrated that, even with the assistance of DSS, mother refused or was unable to maintain steady employment, manage her finances, keep stable housing, or maintain consistent visitation with Brandon. Mother moved multiple times between March and August 1998, when she was homeless again.

When Brandon came into foster care at age three, he was withdrawn and angry. After more than two years in foster care, Brandon showed great progress. He was no longer as angry and

-

was described as a loving child attached to his foster parents. Evidence introduced by DSS indicated that separating Brandon from his foster parents "'would create a tremendous amount of anxiety for this young man and trigger a significant increase in his angry acting out behavior.'"

Mother contends that her low level retardation and depression constituted good cause for her failure to establish either stable housing or employment or to maintain contact with Brandon and to adequately plan for his future.  The trial court found that explanation inadequate.  Despite extensive services, mother made little substantive improvement in her ability to maintain a stable lifestyle.  She blamed any inconsistency in her contact with Brandon on DSS, failing to acknowledge any responsibility on her part.  The record contains ample support for the trial court's determination that DSS presented clear and convincing evidence sufficient to meet the statutory requirements of Code § 16.1-283(C)(1).

Accordingly, the decision of the circuit court is summarily affirmed.

<u>Affirmed.</u>

-